CLARA R. SMIT, ESQ.
ATTORNEY AT LAW
100 HORIZON CENTER BLVD
HAMILTON, NJ 08691
(732) 843-6600
ATTORNEY FOR THE PLAINTIFF

# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| **TAMMY and RICHARD WATSON** | : |
| | : |
| **Plaintiffs,** | : |
| V. | : CIVIL ACTION NO.: |
| | : |
| **CLOVER HEALTH** | : |
| | : COMPLAINT AND JURY DEMAND |
| | : |
| | : |
| **Defendant.** | : |
| | : |

The Plaintiffs, Tammy and Richard Watson, residing at 609 Applefield Loop, City of Hammonton, County of Atlantic, State of New Jersey, files this Complaint, and would respectfully show the Court as follows:

**NATURE OF CASE**

1. On July 26, 1990, Congress enacted the Americans with Disabilities Act, 42 U.S.C. Section 12101 et seq., establishing the most important civil rights for persons with disabilities in our country's history. This action is brought by the plaintiffs, Tammy and Richard Watson, against Clover Health, in their failure to provide reasonable accommodations for the plaintiffs disability and for discrimination based on disability during yearly home visits. The plaintiffs experienced humiliation and discrimination in violation of their civil rights through defendant's policies and practices of discrimination on the basis of disability.

2. This action claims that defendants violated the New Jersey Law Against Discrimination, N.J.S.A. 10:5-1, et. seq., hereafter NJLAD, the ADA, Section 504 of the Rehabilitation Act, and Section 1557 of the Affordable Care Act. In this action, Plaintiff suffered damages and now seeks declaratory and injunctive relief, and compensatory and punitive damages.

**JURISDICTION AND VENUE**

3. Jurisdiction of this court is invoked pursuant to N.J.S.A. 10:-5-1 et. seq, the Americans with Disabilities Act, Title III, 28 USCS Section 12181 et seq,(hereinafter referred to as the "ADA") the Rehabilitation Act, 29 USCS Section 794, (hereinafter referred to as "Section 504" or the "Rehab Act") and Section

1557 of the Affordable Care Act.(hereinafter referred to as the "ACA") This suit is authorized and instituted pursuant to the exercise of the police power of the State for the protection of the public safety, health, and morals and to promote the general welfare and fulfillment of the provision to the Constitution of the State of New Jersey and the United States of America guaranteeing civil rights.

### PARTIES

4. Tammy and Richard Watson are residents of the City of Hammonton, County of Atlantic and State of New Jersey. Plaintiffs Tammy and Richard Watson are profoundly deaf and communicate through American Sign Language. They require qualified American Sign Language interpreters, reasonable accommodations/modifications and other auxiliary aids and services to communicate effectively with Defendant and to benefit from Defendant's services. Plaintiffs are qualified persons with a disability pursuant to Section 504, the ADA and NJLAD.

5. Defendant, Clover Health , is located at 125 Chubb Ave Suite 100S, City of Lyndhurst, County of Bergen and State of New Jersey. It is a public entity under the ADA, ACA and is a recipient of federal financial assistance. Thus, it is subject to the requirements of the ADA, ACA and Section 504.

## FACTS

6. One of the most important parts of the Americans with Disabilities Act is Title III, known as the "Public Accommodations and Services Operated by Private Entities". 42 U.S.C. Section 12181 et seq.

7. The New Jersey Law Against Discrimination specifically prohibits discrimination based upon disability under 10:5-12.

8. Section 504 of the Rehabilitation Act of 1973, provides that "No otherwise qualified individual with a disability" shall be "excluded, denied or discriminated against" by any facility receiving "federal financial assistance".

9. The Affordable Care Act is the civil rights provision of the Affordable Care Act of 2010. Section 1557 prohibits discrimination based on the basis of disability in health care programs and activities.

10. Defendant provides public accommodations within the meaning provided in each of the above laws.

11. As relevant to the present action, discrimination includes a failure to provide appropriate and reasonable auxiliary aids to plaintiff who has a hearing loss to ensure effective communication. 28 C.F.R. Section 36.303(c).

12. Among these aids include a failure to provide interpreters to plaintiffs Tammy and Richard Watson during their multiple home health care

visits. These aids were requested and denied by the defendant during each yearly home health care visit in 2020, 2021, and 2022.

## MATERIAL FACTS

13.     Plaintiffs Tammy and Richard Watson enrolled in Clover Health to assist them with their medicare benefits. This program provides for annual Clover Care visits. This allows for a nurse to visit members in their home once per year to assist with health checks, wellness advice and information on prescriptions, vaccines, doctors, and medicare benefits.  In addition, Clover Health provides incentives such as gift cards for certain programs which plaintiffs were either unable to participate in or struggled to understand the logistics due to lack of communication.

14.     In 2020 Clover Health called plaintiffs to tell them that a nurse needed to come do an assessment in their home. Plaintiff Tammy Watson told the representative that they would need an interpreter to accompany the nurse to their home for communication. The Clover Health representative told plaintiffs that they would get back to them regarding their request for an interpreter. Clover Health never got back to them in 2020, thus plaintiffs were unable to get assistance from this program in 2020 regarding medicare benefits, assistance with their healthcare needs and rewards.

13. In 2021, Clover Health called the plaintiffs to ask them questions which Richard Watson could not understand. Plaintiffs requested over the videophone that a nurse come to their home with a qualified interpreter. Plaintiff Tammy Watson has extreme difficulty due to low vision, using a videophone. She can have limited simple communications as she has a very large screen for her videophone in her home. Thus she requires an on-site interpreter and requested same after explaining that she has low vision. Clover Health once again failed to come to their home, and plaintiffs were once again unable to benefit from the Clover Health programs.

16. On October 8, 2021 Clover Health called and told plaintiffs that they would be finally be conducting a home visit. Plaintiff Tammy Watson told the representative once again that they would require an on-site sign language interpreter during the home visit due to their deafness and low vision. Tammy also explained that due to her low vision she would have extreme difficulty using a video remote interpreter("VRI") on a small screen. Clover did nothing for the following ten months to set up this meeting with an interpreter.

17. Finally on August 11th, Plaintiffs were contacted about this meeting and Plaintiff once again explained an on-site interpreter was necessary for the scheduled meeting of August 25th. On August 24, 2022 Clover Health called plaintiffs and told them that they would be coming he following day with an interpreter. On August 25, 2022 a nurse arrived at plaintiffs' home without an

interpreter and wearing a mask which made even simple communication almost impossible. The nurse put a computer on a table and appeared to be trying to talk to someone on the phone but wrote she did not have an interpreter. Due to the lack of interpreter, the home visit was unable to proceed and the nurse was asked to leave by plaintiffs.

18. A letter was sent to plaintiffs in September of 2022 from Clover Health to plaintiffs after plaintiffs filed a grievance with defendant regarding the lack of interpreters for home visits. The letter indicated that Clover Health attempted to reschedule the home visit with an ASL interpreter. However, plaintiffs did not receive a call from Clover Health during this time.

19. On October 11, 2022 plaintiff called and spoke with a representative named Athena at Clover Health. This representative set them up with an appointment for October 27, 2022 and told plaintiffs that she would call and confirm this appointment on October 26, 2022. The representative did not call plaintiffs on October 26, but instead called them the following day which was when their appointment was scheduled for and canceled the appointment. Plaintiffs were told the appointment was canceled due to the lack of an interpreter.

20. In November 2022, plaintiffs gave the phone number of an interpreting agency to Clover Health as Clover had repeatedly failed to obtain an interpreter and thus failed to provide a home care visit with effective

communication for the three years plaintiffs were in Clover Health." Clover Health apparently met with the interpreter agency who explained the procedures and fees associated with obtaining an interpreter. However Clover Health has not followed up with this information and to date has never provided an interpreter nor had a meeting with plaintiffs.

21. Plaintiffs were ignored, humiliated and treated like non-persons by defendant. Defendant's actions resulted in the plaintiffs being irretrievably denied the services and all of the rewards that Clover Health offers and provides to nondisabled individuals who are under their plan. Instead plaintiffs experienced shame, anxiety, frustration, emotional distress, fear and discrimination.

22. Each and all of the above acts, both of omission and commission, were intentional acts of discrimination and each and all were a proximate cause of the damages suffered by plaintiff. Plaintiffs will require the services of defendant in the future as Clover Health provides an important service to its members which plaintiffs continue to . However, based upon defendant's ongoing pattern of discrimination, plaintiffs will once again be denied reasonable accommodation for their disability.

23. Defendant's willful, knowing and repeated acts of intentional discrimination against plaintiff evidences a pattern and practice of discrimination

that is in violation of N.J.S.A. 10:5-1, et seq., the ADA and the Rehabilitation Act and caused plaintiff to suffer and continue to suffer mental pain and anguish.

## CLAIMS

24. Plaintiffs reallege and incorporate by reference the allegations of fact contained in the previous paragraphs.

## FIRST COUNT
## DEFENDANTS VIOLATED TITLE III OF THE AMERICANS WITH DISABILITIES ACT

25. Plaintiffs hearing loss substantially limits their major life activities, including their ability to effectively communicate. Therefore, plaintiffs are individuals with a disability under Title III of the ADA. Plaintiff meets the essential eligibility requirements for defendant's programs, services, and activities at all times material hereto. Thus, plaintiffs are qualified individuals with a disability and is entitled to the protections of the ADA under 29 USCS Section 794, et seq.

26. Defendant violated Title III of the ADA in numerous ways, including discriminatory actions which occurred when they:

(a) Failed to maintain policies and procedures to ensure compliance with Title III of the ADA, specifically policies that provide equal access and effective communication to individuals with disabilities;

(b) Failed to ensure that communications with plaintiffs were as effective as communications with non-disabled patients;

(c) Failed to provide auxiliary aids and services, including qualified interpreters, and to modify policies and procedures to prevent discrimination against plaintiff;

(d) Failed to establish effective self-evaluations and/or provide notice of Plaintiff's rights as an individual with a disability under the ADA;

(e) Failed to train staff on how to utilize the video remote interpreting system; and

(f) Excluded plaintiffs from services of the public entity and denied plaintiffs the benefit of these services due to their disability.

27. Plaintiffs suffered severe emotional distress and damages in the past, and continue to suffer emotional distress and damages due to defendant's violations of Title III of the ADA.

## SECOND COUNT
## DEFENDANTS VIOLATED SECTION 504 OF THE REHABILITATION ACT OF 1973

28. Plaintiffs are deaf and their disability substantially limits their major life activities, including her ability to effectively communicate with others who do not know sign language. Therefore, plaintiffs are considered to be individuals with disabilities under Section 504, as amended, See 29 U.S.C. §706(8). Plaintiffs are

otherwise qualified under Section 504 because they meet the essential eligibility requirements for defendant's services at all times material hereto. Defendant is also a recipient of federal financial assistance.

29. Defendant's policies, practices and procedures, particularly the actions and omissions described above, violated the plaintiffs rights under Section 504 by discriminating on the basis of disability.

30. Additionally, defendant also denied plaintiffs services which it made available to non-disabled patients.

31. Defendant violated plaintiffs rights through repeated refusals to reasonably accommodate Plaintiffs with appropriate auxiliary aids and services or to modify policies and procedures to prevent discrimination.

32. Plaintiff suffered severe emotional distress and damages in the past, and continues to suffer distress and damages due to defendant's violations of Section 504.

### THIRD COUNT
### DEFENDANTS VIOLATED THE NEW JERSEY LAW AGAINST DISCRIMINATION

31. Defendant's conduct is in violation of the N.J.S.A. 10:5-1, et seq., N.J.S.A. 34:1-69.10 et seq.

33. At all times relevant to this action, plaintiffs have had a substantial impairment to the major life activity of hearing and speaking and thus are qualified individuals with a disability.

34. Discrimination under the NJLAD includes any failure to take such steps as may be necessary to ensure that no individual with a disability is excluded, denied services or otherwise treated differently than other individuals because of the absence of reasonable modifications in policies, practices or procedures or auxiliary aids and services.

35. As set forth in the foregoing allegations about plaintiffs' treatment by defendant and its agents and medical personnel operating within its facilities, defendant has discriminated against and continues to discriminate against the plaintiff on the basis of her disability by denying them meaningful access to the services, programs and benefits the defendant offers to other individuals.

36. Plaintiff is therefore entitled to seek and recover all appropriate compensatory damages, injunctive relief and attorneys' fees they sustained as a result of defendant's discriminatory conduct and deliberate indifference.

## FOURTH COUNT
## DEFENDANT VIOLATED THE AFFORDABLE CARE ACT

37. At all times relevant to this action, Section 1557 of the Patient Protection and Affordable Care Act , 42 U.S.C. . § 18116 was in full force and effect and applied to defendant's conduct.

38. At all times relevant to this Action, Section 1557 incorporated the definition of disability in the Rehabilitation Act, 29 U.S.C. § 705(9).

39. At all times relevant to this action, plaintiff's primary language for communication was American Sign Language and not English; and plaintiff had limited ability to read, write, speak or understand English and was an individual with limited English proficiency within the meaning of Section 1557, 45 C.F.R. § 92.4.

40. At all times relevant to this action, defendant received federal financial assistance, including Medicaid reimbursements, and was principally engaged in the business of providing health care.

41. Pursuant to Section 1557, "an individual shall not, on the ground prohibited under ….section 504 of the Rehabilitation Act of 1973 (29 U.S.C. 794), be excluded from participation in, be denied the benefits of or be subjected to discrimination under any health program or activity, any part of which is receiving Federal Financial assistance….."

42. Defendant has discriminated against plaintiffs on the basis of their disabilities and their limited English proficiency by denying her meaningful access to the services, programs and benefits the defendant offers to other individuals

by refusing to provide auxiliary aids and services to ensure effective communication.

43. Defendant discriminated against the plaintiff by failing to ensure effective communication through the provision of qualified sign language interpreters, thus also failing to give them the same information and resources that other nondisabled members of Clover have.

44. Plaintiff is therefore entitled to seek and recover compensatory damages and for injuries and loss they sustained as a result of defendant's discriminatory conduct and deliberated indifference as hereinbefore alleged, pursuant to 42 U.S.C. § 18116(a).

45. Plaintiff is further entitled to an award of attorney's fees, costs, and disbursements pursuant to 42 U.S.C. § 18116(a), the Rehabilitation Act, 29 U.S.C. § 794(a)

**PRAYER FOR RELIEF**

**WHEREFORE,** Plaintiff respectfully prays that this Court grant the following relief against the Defendants, jointly and severally for the following:

46. Enter a declaratory judgment, pursuant to Rule 57 of the Federal Rules of Civil Procedure, stating that Defendants' practices, policies and procedures have subjected Plaintiffs to discrimination in violation of Section 504

of the Rehabilitation Act, Title III of the Americans with Disabilities Act, the New Jersey Law Against Discrimination, and the Affordable Care Act.

47. Permanently enjoin Defendant from any practice, policy and/or procedure which will deny Plaintiff equal access to, and benefit from Defendant services or which deny Plaintiff's communication with Defendant. Enter a permanent injunction ordering Defendants:

    A.    To cease discrimination against Plaintiff and other deaf or hard of hearing patients;

    B.    To promulgate and comply with policies and procedures to ensure that Defendant and its staff do not discriminate against individuals who are deaf and hard of hearing;

    C.    To promulgate and comply with procedures to ensure that Defendants will provide and pay for interpreter services when needed by individuals who are deaf or hard of hearing in all services offered by Defendant;

    D.    To promulgate and comply with procedures to ensure that Defendant will notify individuals who are deaf or hard of hearing of their right to effective communication. This notification will include posting explicit and clearly worded

notices that Defendant will provide sign language interpreters, Videophones, and other communication services to ensure effective communication with and for deaf or hard of hearing persons.

48. Award compensatory and punitive damages;

49. Award reasonable costs and attorneys' fees; and

50. Award any and all other relief that may be necessary and appropriate.

### JURY DEMAND

51. Plaintiff demands trial by jury for all of the issues a jury properly may decide, and for all of the requested relief that a jury may award.

Respectfully submitted,

/s/ Clara R. Smit

CLARA R. SMIT, ESQ.
Attorney for Plaintiff

Dated: 2/22/23

## **CERTIFICATION**

Pursuant to Rule 4:5-1, I, Clara R. Smit, certify that I am a member of the firm of Clara R. Smit, attorney for the Plaintiff stated herein. To my information and belief, the matter in controversy is not the subject of any other action pending in any other Court, or of a pending arbitration proceeding and no other action or arbitration proceeding is being contemplated. At this time, the Plaintiffs know of no other party who should be joined in this action.

/s/ Clara R. Smit

Clara R. Smit, Esq.
Attorney for Plaintiff

Dated: February 22, 2023